IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TIMOTHY M. BENSON, | ) |
|       Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. _____ |
| TRINITY INDUSTRIES, INC., A Delaware Corporation and TRINITY HIGHWAY PRODUCTS, LLC, A Delaware Limited Liability Company, 19001 South Western Avenue Torrance, CA 90501, | ) JUDGE: _____ ) ) ) ) ) PLAINTIFF'S ORIGINAL ) COMPLAINT |
|       Defendants. | ) Jury Demand |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW PLAINTIFF, TIMOTHY M. BENSON, and files this action against defendants, Trinity Industries, Inc., a Delaware Corporation and Trinity Highway Products, LLC, a Delaware Limited Liability Company and shows this Court as follows:

### DISCOVERY CONTROL PLAN LEVEL

1. Plaintiff intends to conduct discovery in this case under Level 3 of the Federal Rules of Civil Procedure 26(f)(2).

### PARTIES, JURISDICTION AND VENUE

2. Plaintiff, Timothy M. Benson, is a citizen of the United States and maintains his personal residence in Park County, Illinois at 422 W. Washington Ave., Lake Bluff, Illinois 60044 and by the filing of this Complaint submits to the jurisdiction and venue of this Court.

3. Defendant Trinity Industries, Inc. (hereinafter sometimes "Trinity Industries") is a Delaware corporation authorized to do business in the State of Texas with its principal office located at 2525 Stemmons Freeway, Dallas, Texas 75207.

4. Trinity Industry's agent for service in Texas is CT Corp System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201-4234 and may be properly served in this action by delivering an original summons and complaint to such registered agent for service.

5. Trinity Highway Products, LLC (hereinafter sometimes "Trinity Highway Products") is a Delaware Limited Liability Company authorized to business in the State of Texas with it principal office located at 2525 Stemmons Freeway, Dallas, Texas 75207.

6. Trinity Highway Products' agent for service in Texas is CT Corp System, 350 N. St. Paul St., Suite 2900, Dallas Texas 75201-4234 and may be properly served in this action by delivering an original Summons and Complaint to such registered agent.

## BACKGROUND

7. Trinity Industries, Inc. is the parent corporation of Trinity Highway Products, LLC and as such controls Trinity Highway Products, LLC (collectively "Trinity").

8. Trinity is in the business of manufacturing and selling various highway safety and construction products for use across the United States. Specifically, Trinity manufactures and sells the ET-Plus guardrail end terminal ("ET-Plus") under an exclusive licensing agreement from Texas A & M University.

9. The ET-Plus unit is commonly referred to as a "head," and when used in conjunction with the standard "W" style guardrail seen throughout the roads and highways of America, is designed to safely absorb and dissipate the energy of a vehicular impact.

10. Upon impact, the guardrail is designed to be extruded through the head and flattened out into a ribbon, thus absorbing the majority of the collision energy. The original production of the ET-Plus, built to approve specifications, was overall very successful.

11. The ET-Plus, along with each and every other product used on the National Highway System throughout the United States must undergo testing to determine and validate crashworthiness before the product may be placed on the National Highway System or on the roads of the State of Illinois.

12. The Federal Highway Administration, a division of the United States Government under the U.S. Department of Transportation, along with other state and federal organizations, are charged with establishing the crashworthiness criteria for products such as the ET-Plus.

13. Illinois, like other states, requires that its Department of Transportation ("IDOT") approve any product installed on its roadways. Each highway project in Illinois is governed by contract documents issued by IDOT. These documents require that any products installed on Illinois' highways be previously approved by IDOT and compliant with National Cooperative Highway Research Program Report 350 ("NCHRP 350"), if tested prior to January 1, 2011, or tested using the Manual for Assessing Safety Hardware ("MASH"), if presented for testing after that date. Products previously accepted under NCHRP 350 do not need to be retested unless, of course, the product is changed.

14. NCHRP 350, Recommended Procedures for the Safety Performance Evaluation of Highway Features, establishes a performance range on several criteria that guardrail terminals must satisfy as many as seven different tests to be deemed safe and reliable for installation. The prime contractor who submits a winning bid on a project must sign contract documents agreeing with the NCDOT to install only state-approved, NCHRP 350 or MASH-compliant products.

15. Illinois has an Approved List for the product at issue (GR-9 Terminals). Trinity manufactures and sells guardrail end terminals under the names ET-2000 Plus, ET-Plus and ET-31, among others. The ET-Plus, also known as ET-2000 Plus, was approved by IDOT and placed on IDOT's Approved List for End Terminals by 2001. The version of the ET-Plus approved by IDOT remains on IDOT's current Approved Product List. IDOT has not approved any other version of the ET-Plus.

16. Once a product is approved for use along the National Highway System or the roadways of Illinois, its design specifications cannot be altered; or if altered, the product must undergo additional testing and approval prior to its placement on the roadways of the state or the National Highway System.

17. Beginning sometime between 2000 and 2005, a different or altered ET-Plus started appearing along the National Highway System and on the roads in the State of Illinois, in particular, a revised or altered "head" was manufactured with an exit gap of approximately 1.0 inches rather than approximately 1.5 inches as originally tested, approved, and manufactured.

18. Beginning in early 2005, yet another different or altered ET-Plus started appearing along the National Highway System and on the roads in the State of Illinois; in particular, an or altered 'head' was manufactured with a 4" feeder chute (as opposed to the prior approved 5" feeder chute) and a shorter overall height.

19. In addition to the above, due to the shortened height, the feeder rails are actually inserted *into* the head by .75" rather than being welded flush to it as originally designed and approved, thus drastically reducing the overall space of the feeder chute.

20. Trinity twice petitioned the Federal Highway Administration ("FWHA") for approval for modifications to other components of the overall ET-Plus system; once in

September of 2005 and then again in August of 2007. These September 2005 and August 2007 requests dealt with components sold with the ET-Plus and their configuration; nowhere in these proposed design changes sent to the FWHA does Trinity mention the reduced feeder chute size, the insertion of the feeder rails into the head, or any other changes to the ET-Plus head.

21. Based upon information and belief, Trinity never officially notified or petitioned the Federal Highway Administration, the FWHA, Illinois Department of Transportation or any branch or unit of any federal or state government for approval or consideration of the feeder chute changes as described above.

22. The ET-Plus, as modified in 2005 and at issue in this case, does not allow the guardrail to feed properly through the chute due to the reduced internal area of the head itself, causing the guardrail to "throat lock" in the head during impact.

23. Once "throat lock" occurs, as is the case in this action, the energy of the crash is diverted elsewhere, and as in this case, violently stops or redirects the vehicle in a manner causing serious injury or death.

24. Based on information and belief, Trinity, at all times relevant hereto, knew of the dangerous conditions created by its unapproved, modified ET-Plus system, as literally hundreds of thousands of these unapproved, secretly modified, inherently dangerous ET-Plus systems have been in use across the country for several years preceding the incident at issue in this lawsuit.

### FACTS

25. Paragraphs 1 through 25 are incorporated by reference as though fully and completely set forth herein

26. The motor vehicle collision giving rise to this cause of action occurred in Park City, Lake County, Illinois on June 9, 2013 at or about 10:45 a.m.

27. At or about 10:45 a.m. on Sunday, June 9, 2013, Plaintiff Timothy M. Benson was traveling northbound on Rt. 41 in Park City, Lake County, Illinois at or near the intersection of Old Skokie in his 2002 Pontiac Grand Prix automobile.

28. At the time and place described in the preceding paragraph Plaintiff Timothy M. Benson lost control of his vehicle which impacted with Trinity's ET-Plus end terminal at issue.

29. Trinity's ET-Plus end terminal failed to properly extrude and, rather than performing properly and as it was originally intended and approved, caused the guardrail to lock inside the end terminal and fail to dissipate the energy of the vehicle in a safe manner.

30. Rather than absorb or dissipate the impact as the system was originally designed and approved to do, the guardrail, rather than ribboning, acted as a spear and impaled the vehicle and its occupant, Timothy Benson.

31. As a result of the failure of the terminal and guardrail, Plaintiff Timothy M. Benson incurred severe, life-threatening, life-altering injuries from which he continues to suffer.

32. Plaintiff was removed from the scene of the collision and taken by ambulance to Advent Condell Medical Center Emergency in Libertyville, Illinois.

### Count One
### Negligence as to Trinity Industries, Inc. and Trinity Highway Products, LLC

33. Paragraphs 1 through 33 are incorporated by reference as though fully and completely set forth herein.

34. At all times relevant hereto, Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC had a duty to exercise reasonable care and to comply with the existing standards of care in their preparation, design, research, development, manufacture, inspection,

testing, labeling, marketing, promotion and sale of their products, and more specifically in this instance, the modified ET-Plus guardrail end-cap.

35. At all times relevant hereto, Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC changed, modified and altered their ET-Plus guardrail system, and more specifically their ET-Plus end cap unit, without any notice or warning to consumers or those whom they knew would be impacted.

36. Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC knew of multiple failures of the altered ET-Plus end-caps and failed to disclose either the modifications to the product or the dramatic increase in severe, even death-producing collisions occurring across the United States.

37. The changed, modified and altered ET-Plus end-cap was sold, including the ET-Plus end-cap at issue in this lawsuit, to users of the product, including but not limited to the State of Illinois, or in the alternative, Lake County, Illinois, without adequate notice as to such changes, alterations or modifications or of the dangerous propensities and/or experiences occurring across the United States.

38. The changed, modified and altered ET-Plus end-cap resulted in the guardrail at issue, and guardrails across the United States, failing rather than properly absorbing the energy of an impact, it locks up and injuries or kills vehicle occupants due to the trauma of the sudden stop, by catapulting the vehicle, redirecting it in an unsafe manner, or causing the guardrail, as here, to impale the vehicle.

39. The changed, modified and altered ET-Plus guardrail system, and more specifically the end-cap unit which resulted in the guardrail at issue and guardrails across the

United States, was defective in its design and configuration and failed to carry warnings of its re-design, alteration and known (to the manufacturer and seller) dangerous propensities

40. Defendant Trinity had a duty to exercise ordinary care in the design, testing, marketing and distribution of the impact head system to ensure that it was not unreasonably dangerous for its intended and foreseeable use on the highways. Defendant Trinity knew, or in the exercise of ordinary care should have known, that the impact head as re-designed in approximately 2005 was defective and unreasonably dangerous to members of the driving public, including Plaintiff. Defendant Trinity breached its duty of ordinary care by placing the end terminal into the stream of commerce in a defective and unreasonably dangerous condition and by certifying it as NCHRP 350 compliant. This negligence on the part of Defendant Trinity was a proximate cause and cause-in-fact of the injuries sustained by Plaintiff.

41. As a direct and proximate cause of Defendants Trinity Industries' and Trinity Highway Products' negligence/gross negligence, Plaintiff Timothy Bensen incurred life-threatening, life-altering injuries, which injuries will result in permanent disability to Plaintiff.

**Count Two**
**Strict Liability**

42. Paragraphs 1 through 42 are incorporated by reference as though fully and completely set forth herein.

43. Defendant Trinity Highway Products, LLC sold the guardrail and end-cap at issue as new, knowing and intending the motoring public, including but not limited to the Plaintiff, would be affected.

44. The product at issue, in this case the altered and re-designed guardrail and end-cap which was in use at or near northbound Rt. 41 in Park City, Lake County, Illinois at or near the intersection of Old Skokie, was not merchantable or reasonably suited to its' intended use; to wit: properly absorbing the energy of an impact and redirecting the guardrail in a safe manner away from the impacting vehicle, when sold and was defective in its re-design and manufacture.

45. The product at issue, in this case being the altered and re-designed guardrail and end-cap which was in use at or near northbound Rt. 41 in Park City, Lake County, Illinois at or near the intersection of Old Skokie, was the proximate cause of the critical injuries suffered by the Plaintiff.

46. Defendant Trinity Highway Products, LLC is strictly liable for Plaintiff's injuries.

## Count Three
## Product Liability

47. Paragraphs 1 through 47 are incorporated by reference as though fully and completely set forth herein.

48. Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC manufactured and sold the ET-Plus guardrail system at issue in this lawsuit.

49. Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC failed to exercise ordinary care in the re-design, alteration and modification of their product because, among other things:

(a) Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC revised or altered the 'head' of the end-cap which was manufactured with a 4" feeder chute (as opposed to the prior 5" feeder chute);

(b)     Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC shortened the height, as the altered feeder rails are inserted into a head .75" space rather than being welded flush to it as was originally designed and approved, thus drastically reducing the overall space of the feeder chute.

50.    Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC never notified or petitioned the Federal Highway Administration, the Illinois Department of Transportation or any branch or unit of any federal or state government for approval or consideration of the feeder chute changes as described above which, as redesigned and altered does not allow the guardrail to feed properly through the chute due to the reduced internal area of the head itself which causes the guardrail to 'throat-lock" in the head during impact.

## Damages

51.    Paragraphs 1 through 51 are incorporated by reference as though fully and completely set forth herein.

52.    As a direct and proximate cause and result of the negligence of Defendants Trinity Industries and Trinity Highway Products, individually and/or collectively, Plaintiff Timothy Benson sustained significant life-threatening, life-altering personal injuries, including without limitation severe physical and emotional damages including shock and fear, and pain and suffering, all to be described more fully and completely at trial.

53.    Plaintiff Timothy Benson seeks damages from the Defendants, individually and/or collectively, for all of his past, present and future medical and other necessary expenses resulting from the injury, for his past, present and future loss of income and diminished capacity to earn, for his past, present and future pain and suffering, and for all other damages allowed by law.

Further, based on the Defendants' conduct as described above, Plaintiff Timothy Benson will be seeking punitive damages.

**WHEREFORE**, having fully and completely set forth their claims against the defendants: Trinity Industries, Inc. and Trinity Highway Products, LLC, Plaintiff prays for the following relief:

(a) For trial by jury;

(b) For judgment against defendants Trinity Industries, Inc. and Trinity Highway Products, LLC for his general, compensatory, special and punitive damages to the full extent of the law;

(c) For his costs and attorneys fees; and

(d) For such other and further relief as this Court deems just and proper.

Submitted this 26th day of February, 2014.

Respectfully,

_____
Steve Sumner
State Bar of Texas No. 19508500
E-Mail: ssumner@sumnerschick.com
Gayle Boone
State Bar of Texas No. 02628500
E-Mail: gboone@sumnerschick.com

**SUMNER, SCHICK & PACE, LLP**
3811 Turtle Creek Blvd., Suite 600
Dallas, Texas 75219
Telephone: (214) 965-9229
Facsimile: (214) 965-9215

*OF COUNSEL:*

Steven Lawrence
State Bar No. 24038227
E-Mail: steven@stevenlawrencelaw.com
**THE LAWRENCE LAW FIRM**
700 Lavaca Street
Suite 1400
Austin, Texas 78701
Phone: (512) 686-3312
Facsimile: (512) 686-3342

Melvin L. Hewitt, Jr. (Pro Hac pending)
Georgia Bar No. 350319
E-Mail: mel@isenberg-hewitt.com
**ISENBERG & HEWITT, PC**
7000 Peachtree Dunwoody Road
Building 15, Suite 100
Atlanta, GA 30328
Phone: (770) 351-4400
Facsimile: (770) 828-0100